N. Brown FELTY, Appellant,

v.

GRAVES–HUMPHREYS
COMPANY, Appellee.

No. 85–1310.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1985.

Decided March 7, 1986.

Rehearing and Rehearing En Banc
Denied May 5, 1986.

Donald W. Huffman (Nate L. Adams, III, Bird, Kinder & Huffman, Roanoke, Va., on brief), for appellant.

William P. Wallace, Jr. (Bayard E. Harris, Faith M. Wilson, Woods, Rogers & Hazlegrove, Roanoke, Va., on brief), for appellee.

Before HALL, MURNAGHAN, and WILKINSON, Circuit Judges.

K.K. HALL, Circuit Judge:

N. Brown Felty appeals from an order granting summary judgment for Graves-Humphreys Company ("Graves-Humphreys") in his action alleging a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, 604 F.Supp. 730. The issue for our consideration is whether Felty filed a charge of discrimination within 180 days of the "allegedly unlawful practice" as required by

29 U.S.C. § 626(d)(1). The district court held that a timely charge had not been filed and that equitable tolling of the limitation period was not appropriate. Because we conclude that the district court failed to consider the applicability of equitable estoppel to the facts of this case, we reverse the judgment below and remand for further consideration.

### I.

Felty was employed by Graves-Humphreys Inc., a distributor of athletic, industrial art and vocational education equipment, from 1939 to 1951, and continuously from 1954 until the Frank Paxton Corp. ("Paxton") acquired the company in February, 1982. Paxton formed the new corporation of Graves-Humphreys Company which employed Felty until his formal termination on March 31, 1983. At the time of his termination Felty was 60 years of age.

Between the acquisition of Graves-Humphreys by Paxton in February of 1982, and November 12, 1982, Frances Yates, Vice-President and General Manager of the newly-formed company, conducted a meeting in which she notified employees of the new organizational structure resulting from the acquisition and consequent terminations. During the meeting, a copy of an organizational chart containing the names, positions, and ages of certain employees was distributed to each employee. The stated purpose of the document was to inform employees of their reporting responsibility in the new hierarchy. When several employees questioned the notation of ages on the document, Yates indicated that the wrong chart had been distributed. A new document, identical to the first except that the ages of the employees were deleted, was then distributed.

On November 12, 1982, Yates conducted another meeting during which the employees were informed that there would be reductions in the work force in the future. After the general meeting, Yates met individually with each of the twelve persons who were to be terminated. The first person with whom Yates met privately was Felty. During the individual conference, Yates informed Felty of his termination, effective March 31, 1983, and informed him that the reason for his termination was the elimination of his position of buyer. Felty subsequently stated in his deposition that Yates warned him that if he discussed the terminations with anyone he would be subject to immediate dismissal.

Following the individual meetings, Yates gave each affected employee a memorandum entitled "Separation Arrangements." The memorandum offered certain inducements to encourage the employees to remain with the company until their termination dates. Among the benefits offered were an incentive plan through which the affected employee could earn a week's additional pay for each month the employee remained with Graves-Humphreys until the time of termination, extended insurance coverage, and time off for their employment searches.

Despite Yates' warning, on November 12, 1982, Felty discussed his pending termination with Harry Dooley, a younger friend and fellow employee in the Purchasing Department.[1] He learned at that time that Dooley was being retained. In Felty's deposition taken on March 2, 1984, he made the following statement concerning his conversation with Dooley:

> Q  Now, with respect to the basis for your charge, you indicated that you had been discriminated against because of your age because "a younger man, Mr. Harry Dooley, with less experience than I, was retained, but I was discharged."
>
>   Is that correct?
>
> A  Yes, sir.
>
> Q  You knew on November 12 that Mr. Dooley was being retained, did you not?
>
> A  Yes.

---

**1.**  In his deposition, Felty described his relationship with Dooley as "real close." The clear implication is that Felty believed that any conversation with Dooley would be held in the strictest confidence.

Q So, did you feel at that time that after having received notice of your discharge that you were being discriminated against because of your age?

A Yes, sir.

Felty chose to continue working at Graves-Humphreys under the incentive plan until his formal termination, although due to a work-related injury, his last day of actual work was February 28, 1983. At some time during February, he consulted an attorney and expressed a suspicion that his termination was based on his age. His attorney advised him that there was insufficient information for a charge of age discrimination. At trial, Felty maintained that because of the Yates threat of immediate dismissal he did not discuss the termination process with other employees until after March 31, 1983.

Felty filed a claim of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 2, 1983. On August 9, 1983, Felty filed the instant action in the district court. Graves-Humphreys moved for summary judgment on the ground that Felty had not filed a complaint with the EEOC within the statutory period of 180 days from the time of the allegedly discriminatory act. While considering Graves-Humphreys' motion, the district court also conducted an evidentiary hearing to determine whether equitable tolling should be applied to extend the limitation period.

The district court concluded that the limitation period begins to run from the date the employee is informed unequivocally of his termination, regardless of when the effects of termination are felt. After determining that Felty had been given unequivocal notice of termination on November 12, 1982, the court held that the filing period began to run from that date and that Felty's EEOC complaint filed in June, 1983, was therefore, untimely. The court also concluded that equitable tolling was inap-

propriate because the actions of Graves-Humphreys did not conceal from Felty the information necessary to file an EEOC complaint at the time he was notified of his termination. The court, therefore, granted summary judgment in favor of the employer. Felty appeals.

## II.

On appeal, Felty initially disputes the district court's conclusion that he was aware of Graves-Humphreys' allegedly discriminatory activity on November 12, 1982. He asserts that he did not know until after his termination that Graves-Humphreys was engaged in a discriminatory practice of dismissing its older employees. Felty contends that his lack of full knowledge is relevant both to the commencement of the limitation period and to the issue of equitable tolling. Alternatively, he contends that his November 12, 1982, termination notice was not unequivocal and could not trigger the limitation period.

We agree with the court below that the limitation period began to run on November 12, 1982. We further agree that Felty's knowledge of Graves-Humphreys' actions precludes the operation of equitable tolling. We conclude, however, that the court failed to recognize that limitation periods are subject to equitable modification on grounds other than the concealment of information.

The decisions of the United States Supreme Court in *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed. 266 (1981), and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) as interpreted by this Court in *Price v. Litton Business Systems, Inc.*, 694 F.2d 963 (4th Cir.1982), clearly establish that the limitation period in an ADEA action commences with the allegedly discriminatory act.[2] Felty's attempt on appeal to engraft a knowledge component on the *Chardon-Ricks-Price* rationale

---

2. As this Court noted in *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982), "the filing period runs from the time at which the employee is informed of the allegedly dis-criminatory employment decision regardless of when the effects of that decision come to fruition."

is without merit. A plaintiff's lack of knowledge of the discriminatory nature of an employment decision and the reasons for that lack of knowledge are relevant to an analysis of equitable tolling but play no part in determining the beginning of the statutory limitation period.[3]

■ We likewise reject Felty's contention that his termination notice was not unequivocal. While the "Separation Arrangement" referred to the substantial amount of work remaining to be done and contained incentives to continue employment until the formal termination date, these statements did not modify Graves-Humphreys' clear position that "[a]s of today, November 12, 1982, notice is being given that your last work date will be March 31, 1983." Indeed, we fail to see how the termination notice could have been any more unequivocal.

For all of the above reasons, we conclude that the statutory limitation period, as the district court held, began to run on Felty's ADEA claim on November 12, 1982.

### III.

A conclusion on the proper scope of the statutory limitation period does not, as the district court recognized, fully resolve the issue of whether a claim of age discrimination has been timely filed. The limitations period set forth in section 626(d) of the ADEA may be subject to equitable modification when warranted by the conduct of the employer. Such modification has two possible rationales: equitable tolling and equitable estoppel. Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act.[4] Equitable estoppel, in contrast, examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights. *See Naton v. California,* 649 F.2d 691 (9th Cir. 1981).

At trial and in this appeal, Felty has primarily argued the issue of his lack of knowledge. To the extent that he sought modification of the limitation period based on that approach, we see no error in the district court's disposition of the issue. After examining the unambiguous admissions made by Felty in his deposition, we cannot find that the district court's factual conclusion that he had sufficient knowledge to file a complaint on November 12, 1982, "clearly erroneous." *Anderson v. Bessemer City, N.C.,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

As we have noted, however, equitable tolling is not the only mechanism whereby the limitation period can be modified. In ruling on a motion for summary judgment, Fed.R.Civ.P. 56(c) requires that the court consider the record as a whole including the pleadings and depositions. We believe that the district court failed to recognize that a material question of equitable estoppel was also raised on the facts presented.

■ Felty testified that after Yates informed him of his pending termination, she warned him not to discuss the termination or he would be subject to instant dismissal. Whether Yates' order applied only to discussions with other employees and was a rational effort to preserve employee morale or whether it was a blanket gag order that unreasonably extended to possible communications with an attorney or the EEOC is in dispute.

As long as Felty obeyed Yates' order, Graves-Humphreys offered an extremely

---

**3.** Felty seeks to rely upon his interpretation of *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3rd Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). We find that reliance to be misplaced. *Bonham* did not state, as Felty contends, that an aggrieved employee had to have knowledge of the discriminatory nature of his employer's act before the limitation period would begin to run. At most *Bonham* suggested that the limitation period began at the actual termination date. In any event, after *Chardon*

and *Ricks,* Felty's interpretation of *Bonham* has no viability and cannot sustain his contention.

**4.** The district court applied *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 931 (5th Cir.1975), which holds that tolling is only effective until "facts that would support a charge of discrimination" are apparent or should be apparent to the plaintiff.

generous severance package. We have held that an attempt to mitigate the harshness of a decision terminating an employee without more cannot give rise to equitable estoppel. *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862, 864 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). However, a generous severance arrangement conditioned upon compliance with a code of silence would be a powerful inducement that might well lure an older worker into failing to defend his rights. The older employee facing an uncertain financial future with reduced chances of employment would be particularly vulnerable to such a "carrot and stick" approach.

The remedial goals of the ADEA cannot be circumvented by an employer's coercive practices no matter how subtle the form. If an employer engages in activity that it knows or reasonably should know will cause an employee to delay the filing of a discrimination complaint, then the statutory limitation period must be modified. Under these circumstances the modification excludes from the 180-day period such time as the employer's coercion effectively operates to delay the employee's efforts to enforce his rights. The length of time that an employer's coercion is effective is a question of fact. Once such coercion is determined, the court need not assume that it continues until an EEOC complaint is actually filed. Any affirmative act by the employee to enforce his rights would indicate that the employer's improper influence has ended. We note, however, that private conversations with friends in the work force would not qualify as an affirmative act. While we express no opinion on whether Felty's February, 1983, discussion with his attorney would demonstrate that any coercion had lost its effect, we note that if Graves-Humphreys exerted improper influence that lasted until February, 1983, the EEOC complaint filed in June would be timely.

### IV.

For the reasons stated, we conclude that the order of summary judgment must be reversed. We remand this matter for further proceedings consistent with this opinion. We direct the district court to consider whether Graves-Humphreys' actions improperly delayed Felty's EEOC complaint and, if so, to determine the length of delay attributable to such coercive conduct.

REVERSED AND REMANDED.

WILKINSON, Circuit Judge, dissenting:

Judge Charles E. Clark, the architect of the Federal Rules of Civil Procedure, warned in the early years of Rule 56 that appellate courts must review summary judgments from a perspective of conclusion rather than as an opportunity for redirecting the production of facts. "Care should be taken," he wrote, "to make the analogy [between summary judgment and directed verdict] as exact as circumstances permit; the ruling is to be made on the record the parties have actually presented, not on one potentially possible." *Madeirense do Brasil S/A v. Stulman-Emrick Lumber Co.*, 147 F.2d 399, 405 (2d Cir.), *cert. denied*, 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982 (1945). The majority on this appeal has ignored that injunction and, in asking the district court to determine whether corporate intimidation forced Felty to miss his filing deadline, has introduced a new case theory that depends entirely on a contention of fact which has never been suggested by either party. Even worse, the court's unsupported contention is contradicted as a point of fact by the parties' record and is destructive as a point of law to the statutory limitations period in the Age Discrimination in Employment Act (ADEA).

### I.

The majority understates the record in reporting that Felty has throughout this motion "primarily argued the issue of his lack of knowledge" of Graves-Humphreys' discriminatory conduct. *Ante* at 519. Felty has in fact relied almost exclusively on that approach to the delinquency of his EEOC complaint, devoting twenty-two of

the twenty-five pages of argument in his opening brief and sixteen of the eighteen pages in his reply brief to variations of the claim that on November 12 he lacked the awareness necessary to assume a filing responsibility. The only exception to this focus, consuming all of his remaining brief space, has been Felty's alternate assertion that the limitations period did not begin on November 12 because the termination notice was equivocal. Felty's deposition testimony and his termination notice establish, however, that he knew on November 12 everything necessary to file an EEOC charge, including the inevitability of his dismissal on March 31. The majority correctly finds that Felty did not raise a genuine issue of material fact on either of those theories. *Ante,* at 518–519.

The majority's view of equitable estoppel because of an alleged employer threat is another matter. "A finding of estoppel must rest on consideration of several factors," according to the decision to which the majority refers. "Of critical importance is a showing of the plaintiff's *actual and reasonable reliance* on the defendant's conduct or representations." *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981) (emphasis added). The same requirement of reliance is recognized in all cases reviewing claims of equitable estoppel. *See, e.g., Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984); *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 235, 79 S.Ct. 760, 763, 3 L.Ed.2d 770 (1959).

Felty has not even hinted that any reliance on Graves-Humphreys' alleged threat delayed the filing of his age discrimination charge. He did not claim delay from such coercion in his complaint, in his deposition, in his affidavit, in his testimony, in his arguments to the district court, or in his briefs on appeal. Counsel conceded as much to this court in oral argument:

> The Court: Did the judge make any ruling as to whether he was in fact intimidated to refrain from filing his claim?
> Counsel: No, I don't believe—

The Court: Did you ask him to?
Counsel: I don't believe so.

In fact, the argument of delay due to coercion was first raised, *sua sponte,* by this court in appellate oral argument. Introduction of the issue at that point is simply too little, too late. "Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid summary judgment." *Estrella v. Brandt,* 682 F.2d 814, 819–20 (9th Cir.1982). This case is not one in which the appellant has established in district court the factual predicate for tolling the limitations period but has failed to raise the legal theory until appeal. *Cf. Ricard v. Birch,* 529 F.2d 214 (4th Cir. 1975). Felty has not even alleged, much less confirmed by evidence, one of the most important facts necessary to support the contested legal theory.

A void of this dimension in the record cannot be filled by the axiom that "on summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). That principle describes the proper reading of the parties' conflicting accounts; it does not authorize the court to interject its own conjectures. As this court said in *Atlantic States Construction Co. v. Robert E. Lee & Co., Inc. of South Carolina,* 406 F.2d 827, 829 (4th Cir.1969), "it is not the office of Rule 56 to preserve purely speculative issues of fact for trial." *See also Melhorn v. AMREP Corporation,* 373 F.Supp. 1378, 1381 (M.D. Pa.1974) ("there cannot be estoppel by inference"). The leading commentators agree that "the motion should not be denied on the mere chance that there might be facts that would toll the statute." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2734 at 421. Reversal of summary judgment in this situation ignores the burdens of production created by Fed.R.Civ.P. 56 and undermines the incentive for each party to develop

promptly the evidence in support of its case. It is also wholly unfair to appellee which now must endure a remand on a matter which appellant had every opportunity to raise in the first instance but did not.

## II.

Where we turn from the silences in the record to the actual contentions of fact, we can see further that Felty's omission of any coercion argument was fully explainable. The evidence before the court suggests that Felty did not raise the argument because he was in fact unaffected by Graves-Humphreys' alleged threat to fire him upon discussion of the pending dismissal. Felty reports that he violated the command immediately by talking with a fellow employee on November 12 about the termination. He reports also that he again violated the command by talking with an attorney in February about the termination. According to Felty's deposition, Graves-Humphreys "did not want us to say anything about it to anyone anywhere or we could be terminated right there." His conversation with the co-worker flouted this order at least as fully and as openly as his conversation with the attorney, indicating that Felty felt as little intimidation in November as he did in February.* To adopt a legal theory from a silent record is error enough; to nurture it in the face of contrary evidence from its supposed beneficiary is error compounded.

## III.

The majority also misapprehends the operation of the statutory limitations period in ADEA actions involving allegations of employer intimidation. Even if the record

did present the question of the effect of coercion on Felty's delinquent filing, summary judgment would nonetheless be appropriate because that question is not, under a proper analysis of equitable estoppel and the ADEA, a dispute about a "material fact" under Fed.R.Civ.P. 56(c). *See Leas v. Courtney Company*, 261 F.2d 13, 15 (4th Cir.1958) (affirming summary judgment despite "vast disagreement" between parties on immaterial issues). The ADEA encourages prompt recourse to legal remedies once the employee becomes aware of the elements of his claim. *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982). Felty's delay in filing on a claim of which the court is agreed he was aware is therefore insufficient as a matter of law to bar invocation of the 180-day limitations period. For this reason, too, summary judgment should be affirmed.

Congress foresaw the possibility of employer retaliation and disarmed it in the ADEA at 29 U.S.C. § 623(d), which establishes that "It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, asserted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." This anti-retaliation provision is enforced under 29 U.S.C. § 626, entitling a person who has been fired in willful violation of the ADEA to reinstatement and to lost pay, lost benefits, liquidated damages, post-judgment interest, and attorneys' fees. *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109 (4th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); *see also Cline v. Roadway Express, Inc.*, 689

---

* Even if Felty was afraid until February to bring his complaint to the EEOC and even if that fear was sufficient to suspend the ADEA limitations period, the majority is not necessarily correct in its assertion that "if Graves-Humphreys exerted improper influence that lasted until February, 1983, the EEOC complaint filed in June would be timely." *Ante* at 520. This assertion overlooks the principle that "if there is still ample time to institute the action within the statutory period after the circumstances inducing delay

have ceased to operate, a plaintiff who failed to do so cannot claim an estoppel." *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1531 n. 4 (11th Cir.), *cert. denied*, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983) (citations omitted). As the majority believes that Felty knew on November 12 everything that he needed to know in order to file an age discrimination charge, I fail to see why the period from February to June would not be ample.

F.2d 481, 489 (4th Cir.1982) (pre-judgment interest available in absence of liquidated damages). In appropriate circumstances, a plaintiff might even be able to forestall discriminatory action through preliminary injunctive relief. *See Farkas v. New York State Department of Health*, 554 F.Supp. 24 (N.D.N.Y.1982), *aff'd*, 767 F.2d 907 (2d Cir.1985). The ADEA, in short, guaranteed Felty that he would suffer no adverse employment consequences from reporting his suspicions to the EEOC. Felty testified in his deposition that he knew on November 12 of the laws protecting him from age discrimination, and he cannot in any event rely for justification on an ignorance of his legal rights. *See Larson v. American Wheel and Brake, Inc.*, 610 F.2d 506, 510 (8th Cir.1979). He can point only to a lack of confidence in the law, an excuse that this court cannot and should not recognize.

If the majority's view is to prevail, the 180-day limitations period will become a disputed issue in every case, effectively limiting the use of summary judgment. A party can wait indefinitely to bring a claim of which he is aware so long as he alleges a threat in subsequent legal proceedings. This scenario vitiates the inducement to prompt action provided by the protection from employer retaliation in the ADEA. It undercuts the 180-day limitations period which serves the valuable purposes of promptly notifying prospective defendants about a complaint, of facilitating informal methods of reconciliation, *Greene v. Whirlpool Corp.*, 708 F.2d 128, 130 (4th Cir. 1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 1707, 79 L.Ed.2d 171 (1984), and of resolving disputes upon fresh recollections. In applying the ADEA, we must respect this provision and these purposes as well as the competing ADEA objective of protecting workers threatened with retaliation. "Statutes should be read, if possible, as harmonious texts." *Leaf Tobacco Exporters Association, Inc. v. Block*, 749 F.2d 1106, 1115 (4th Cir.1984). That harmony is achieved in this case by enforcing the limitations period and relying on the remedial apparatus to discourage reprisals; the harmony is disrupted by ignoring the limitations period

and bypassing the remedial mechanisms. Because the majority adopts the latter course, its reasoning fails to square with the law as much as it fails to square with the facts.

I would affirm the judgment of the district court.