H. EMMETT POWELL v. EASTERN CAROLINA REGIONAL HOUSING AUTHORITY, J. D. ANTHONY, J. B. POWELL, W. FRANK TAYLOR, W. R. ALLEN AND RAYMOND BRYAN.

(Filed 29 January, 1960.)

**1. Municipal Corporations § 1—**

Housing authorities created pursuant to G.S. 157-2, 157-4, 157-33 and 157-35 are public bodies having the power of eminent domain within their respective areas, G.S. 157-12, which, in the case of regional authorities, is not limited to a single county.

**2. Venue §§ 1c, 2a—**

The venue of an action against a regional housing authority to determine the respective rights of the parties in certain land is properly the county in which the realty is situated and in which the authority has express power to act, notwithstanding that the principal office of the authority is in another county, G.S. 1-76 (1). This result is not in conflict with G.S. 1-77 requiring an action against a public officer to be brought in the county in which he transacts his official business, since a regional housing authority perforce has the power to act in a county in which it is authorized to acquire realty, even though it is not the county of its principal office.

APPEAL by defendant Eastern Carolina Regional Housing Authority (hereafter called Authority) from *Stevens, J.,* September, 1959 Term, of SAMPSON.

Plaintiff, a resident of Sampson County, brings this action to determine the ownership of six tracts of land situate in Wayne County. He alleges he owns 91% of said lands, the individual defendants 6%, and defendant Authority 3%, but asserts it owns the lands in severalty. He seeks to have the respective rights of the parties in the land determined. Appellant is a corporation created pursuant to the provisions of c. 157 of the General Statutes. Its home office is at Clinton in Sampson County.

Defendant in apt time moved for a change of venue removing the action to Wayne County where the land is situate. The court denied the motion. Authority excepted and appealed.

*Hubbard & Jones for plaintiff, appellee..*
*Marshall T. Spears for defendant, appellant.*

RODMAN, J. The Legislature authorized the creation of housing authorities as a means of protecting low-income citizens from unsafe or unsanitary conditions in urban or rural areas, G.S. 157-2. To accomplish this purpose it authorized the creation of city housing authorities in cities or a ten-mile area adjacent thereto, G.S. 157-4, county authorities within a particular county, G.S. 157-33, and regional authorities within an area composed of two or more contiguous counties, G.S. 157-35.

Authorities created pursuant to any of these statutory provisions are "public bodies," "exercising public powers." G.S. 157-9. Hence they are sometimes called municipal corporations. *Cox v. Kinston,* 217, N.C. 391, 8 S.E. 2d 252. They are given the power of eminent domain, G.S. 157-11, which may be exercised in the area of the authority, G.S. 157-12.

". . . a regional housing authority and the commissioners thereof shall, within the area of operation of such a regional housing authority, have the same functions, rights, powers, duties and limitations provided for housing authorities created for cities or counties . . ." G.S. 157-37, G.S. 157-35.

Defendant appellant claims the right to have this action tried in Wayne County by virtue of G.S. 1-76(1). The language of the statute is specific and definite. Plaintiff asserts that the action was properly begun in Sampson County where the Authority has its principal office. He bases his asserted right on G.S. 1-77, and the interpretation which he asserts has consistently been given to that statute, insisting if there be conflict between the two statutes, the latter should control.

When the statutes are interpreted in the light of their historic background, we are of the opinion there is no conflict between the two and full effect may be given to each.

At the earliest period in the development of the common law, all actions were local. Courts were without power to determine controversy arising beyond their territorial limits. Expanding commerce and public convenience led to a relaxation of this rigid rule. A distinction developed between transitory actions, actions which might have occurred anywhere, and local actions which could only have occurred in a particular place. *Livingston v. Jefferson, infra.*

To invest courts with jurisdiction in transitory actions, a fictional averment was made that the cause of action arose in the jurisdiction

of the court. Defendants were not permitted to traverse this fictional averment of situs in transitory actions but could do so in local actions.

The historical development of venue and the limitation of jurisdiction of courts in local and transitory actions is traced by Chief Justice Marshall, sitting as a Circuit Judge, and by District Judge Tyler in the case of *Livingston v. Jefferson,* decided in 1811, reported 15 Fed. Cas. 660, No. 8411, 1 Brock 203.

Plaintiff, a citizen of New York, alleged he was the owner of and defendant had in 1808, while President of the United States, trespassed "at the city of New-Orleans, in the district of Orleans, to wit, at Richmond, in the county of Henrico, and district of Virginia" upon a parcel known by the name of the "Batture of the Suburb St. Mary." Defendant answered and denied liability, asserting that he acted in his official capacity as President of the United States and pursuant to an Act of Congress. As an additional defense he asserted the court was without jurisdiction of an action involving a trespass on land in Louisiana.

For plaintiff it was argued that the action was transitory and might be brought in any court where defendant could be found, and the averment that the trespass occurred at Richmond, Henrico County, Va., could not be traversed. Opinions were written by each of the judges. It was held the action was local and for that reason the court was without jurisdiction.

The distinction there drawn between local and transitory actions has been frequently applied. In *Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 39 L. Ed. 913, the court was called upon to determine the jurisdiction of the Circuit Court of Ohio to try an action involving trespass on land in West Va. Mr. Justice Gray said: "By the law of England, and of those states of the Union whose jurisprudence is based upon the common law, an action for trespass upon land, like an action to recover the title or possession of land itself, is a local action, and can only be brought within the State in which the land lies." Hence it was held that the court sitting in Ohio had no jurisdiction. In *Stone v. U. S.,* 167 U.S. 178, 42 L. Ed. 127, an action was brought in the District Court of Washington by the United States against Stone to recover the value of timber cut by Stone from lands in Idaho. Stone asserted that the court was without jurisdiction for that the action was local and could only be tried in courts sitting in Idaho. The court held that the action for conversion was transitory and not local. Similar conclusions were reached in *Ophir Silver Min. Co. v. Superior Court,* 147 Cal. 467, 3 Ann. Cas. 340.

We recognize and give effect to the form in which the trespass is

alleged. *Makely v. Boothe Co.*, 129 N.C. 11; *Cooperage Co. v. Lumber Co.*, 151 N.C. 455, 66 S.E. 434; *Blevens v. Lumber Co.*, 207 N.C. 144, 176 S.E. 262.

In *Phillips v. Mayor, etc. of Baltimore*, 72 A 902, plaintiff charged that defendant had caused water to pond on the lands of her husband creating a cesspool "emitting noxious odors and gases, and causing the drainage of said cesspool to flow into the cellar of said residence, and from thence into a well on said premises, used by her for drinking and other family and domestic purposes, and that the water of said well was thereby contaminated and poisoned, by reason of which plaintiff was made ill and sick, and was rendered unable to perform her household duties . . ." She brought suit to recover damages in the courts of Baltimore County. Defendant city denied the jurisdiction of the courts of Baltimore County, insisting that it could only be sued in the courts of its residence. The defense so asserted was sustained, because the action was transitory, and a municipality could only be sued in the courts of its jurisdiction on such actions. The court adverted to its previous decision in the case of *Mayor, etc., of Baltimore v. Meredith's F & J Turnpike Co.*, 65 A 35, stating that it expressly adhered to the decision in that case. There the Turnpike Co. had sued the city in the courts of Baltimore County for flooding and trespassing on the property of the Turnpike Co. outside the city of Baltimore. Holding the action local, the Court of Appeals denied the plea of the city of Baltimore that its courts and only its courts had jurisdiction.

Public convenience which required a relaxation of the rule of locality so as to permit transitory actions to be maintained in any court had no application to actions against public officers predicated upon the performance of their public duties. They could only act in a specified area. Such actions were necessarily local; hence public policy demanded that such actions be brought in the area in which the official was authorized to act.

Our Legislature, when it adopted the Code of Civil Procedure, provided in sec. 67 (now G.S. 1-77): "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose . . . Against a public officer . . . for an act done by him by virtue of his office." This is a statutory declaration of the common law, which we adopted in 1778, G.S. 4-1, insofar as it fixes the place for trial. The Act was first interpreted in *Johnston v. Commissioners*, 67 N.C. 101. The question for decision was the right to *mandamus* to compel the levy of a tax. The trial court had declined to issue the order. *Pearson, C. J.*, said: "Should the plaintiff be under the neces-

sity of taking other proceedings in order to get his money, it may be well to submit to his counsel this question, Must not a writ of *mandamus* to 'the Board of Commissioners of a County' be made returnable to the Superior Court of that County? The propriety of this, in a general point of view, will occur to every one. Are the Commissioners of Cleveland to be required to make return to writs of *mandamus* in all and every county of the State, wherever a holder of one of the coupons of a county bond happens to reside? C.C.P., sec. 67, seems to apply. 'Against a public officer,' for an act done by him by virtue of his office, the proceeding shall be in the county where the act is done."

The *Johnston* case was followed by *Steele v. Commissioners*, 70 N.C. 137. There plaintiff sued on a note. Defendant demurred to the jurisdiction of the court for that the cause of action was local. The demurrer was sustained and the action dismissed. On appeal, *Reade, J.*, said: "We did not think that the failure to pay the debt was the cause of action spoken of in the statute, but that the debt itself was the cause of action; and that the expression 'where the cause of action *arose*' meant where the debt was contracted or originated. And that view is strengthened by the second clause above, 'against a public officer * * * for an act done by him by virtue of his office.' Now, as an officer's official acts are confined to his county, and as the cause of action is his official act, it follows that the cause of action spoken of '*arose*' in the county in which the commissioners acted, and not out of their county, where they did nothing 'by virtue of his office.' It seemed to us to be the policy to require that all public officers, when sued about their official acts, should be sued in the county where they transact their official business." Interestingly, although the court was dealing with a question of venue and expressly recognized that fact, it applied the common law rule of jurisdiction and dismissed the action. When that opinion was written, county commissioners had no authority to act beyond their county limits. The Authority has express power to act in Wayne County.

*Jones v. Statesville*, 97 N.C. 86, and *Godfrey v. Power Co.*, 224 N.C. 657, 32 S.E. 2d 27, cited and relied upon by plaintiff, raised questions of liability for personal injuries resulting from a failure to perform official duties. Ordinarily an action for personal injuries for failure to perform a duty is transitory, but when the action involves the performance of an official duty, it becomes a local action. *Light Co. v. Commissioners*, 151 N.C. 558, 66 S.E. 569, likewise involved negligent failure to perform an administrative public duty.

Plaintiff adds to the foregoing list *Cecil v. High Point*, 165 N.C.

431, 81 S.E. 616, which he asserts is determinative of this appeal. There High Point, operating a sewerage plant, discharged within its corporate limits in Guilford, sewerage in a stream which flowed to and on plaintiff's land in Davidson County. Plaintiff brought his action in Davidson. Defendant sought to remove to its home county of Guilford. The motion was allowed. This ruling was affirmed on appeal. As the basis for the decision, *Hoke, J.,* said: "The language of section 420 (now G.S. 1-77) more especially pertinent to the inquiry is that an action against a public officer for an act done by virtue of his office shall be tried in the county where the cause of action or *some part thereof* arose, and our cases just referred to, construing the statute, are in accord with authoritative decisions in other States, in which it is held that where the cause of an alleged grievance is situate or exists in one State or county and the injurious results take effect in another, the courts of the former have jurisdiction."

Concedely, the opinion also contains language supporting plaintiff's position, but the observations with respect to a conflict between G.S. 1-76 and 77 were unnecessary in view of the holding that the wrongful act was done in Guilford and hence the cause of action arose there.

Our interpretation of the basis for the decision conforms with the opinion rendered in the subsequent case of *Murphy v. High Point,* 218 N.C. 597, 12 S.E. 2d 1, holding that High Point could be sued on a cause of action arising in Davidson County because of the discharge of sewerage on land in Davidson County from High Point's plant located in Davidson.

Here the cause of action is the title to the land. The land is situate within the domain of the Authority. If perchance any official act could be claimed as relating to the title to the land, it would be the acquisition of title which could only have occurred in Wayne County where the land is situate. The Authority does not assert any inconvenience by trial in Wayne. To the contrary, it insists that it will be greatly inconvenienced if the cause is not tried where the land is situate and all public records relating to the title are kept.

In our opinion, sound reason and the weight of authority support the position that an action involving the title to real estate is properly triable in the county in which the land is situate. *Mayor, etc., of Baltimore v. Meredith's F & J Turnpike Co., supra; Cooper v. Sanitary Dist. No. 1,* 19 N.W. 2d 619 (Neb.); *Dallas v. Hopkins,* 16 S.W. 2d 852 (Tex.); *Swanson v. City of Sioux Falls,* 266 N.W. 115 (S. Dak.); *Oklahoma City v. District Ct.,* 32 P 2d 318, 93 A.L.R. 489 (Okla.); *Oklahoma City v. Rose,* 56 P 2d 775 (Okla.); *City of Corpus Christi v. McMurrey,* 90 S.W. 2d 868 (Tex.); *Fourth Jefferson D. Dist. v.*

*City of New Orleans,* 14 So. 2d 482 (La.); *Hjelm v. City of St. Cloud,* 152 N.W. 408 (Minn.); *North Sterling Irr. Dist. v. Dickman,* 178 P 559 (Col.); 38 Am. Jur. 421.

Reversed.