LARRY WAYNE SIDES, ADMINISTRATOR OF THE ESTATE OF TERRY COMPTON SIDES v. CABARRUS MEMORIAL HOSPITAL, INC.; J. VINCENT AREY; JOHN R. ASHE, JR.; CABARRUS CLINIC FOR WOMEN, P.A.; J. O. WILLIAMS; WILLIAM J. REEVES AND NANCY ELIZABETH DEASON

No. 7419SC449

(Filed 19 June 1974)

1. **Appeal and Error § 6— appeal from denial of summary judgment — jurisdictional question**

    While there is generally no right of appeal from denial of a motion for summary judgment, G.S. 1-277(b) does give a defendant the right to appeal the judge's ruling as to jurisdiction over the defendant.

2. **Municipal Corporations § 1— definition and function of municipal corporation**

    A municipal corporation, city or town, is an agency created by the State to assist in the civil government of a designated territory and the people embraced within these limits; however, the term "municipal corporation" should not be construed narrowly to include only cities, towns, counties and school districts, but in its broader sense the term includes all public corporations exercising governmental functions within constitutional limitations.

3. **Hospitals § 1; Municipal Corporations § 1— hospital as county agency and not municipal corporation**

    In passing a local act providing for the establishment of a hospital in Cabarrus County, the Legislature intended the hospital to be a county agency and not a separate municipality, since by granting corporate status the Legislature was granting the hospital only the right to own property and make contracts, not the right to assist in the civil government of the area embraced by the hospital.

APPEAL by defendant, Cabarrus Memorial Hospital, Inc., from *Exum, Judge,* at the 3 September 1973 Session of CABARRUS Superior Court.

Heard in the Court of Appeals 15 May 1974.

This action was instituted on the 4th day of April, 1973, by Larry Wayne Sides, Administrator of the Estate of Terry Compton Sides, deceased, to recover the sum of One Hundred Twenty Thousand Dollars ($120,000) for personal injuries and the sum of One Million Five Hundred Thousand Dollars ($1,500,000) for the wrongful death of plaintiff's intestate who died on the 6th day of April, 1971, allegedly as a result of the negligence of several defendants, including Cabarrus Memorial Hospital. The defendant Cabarrus Memorial Hospital filed a

Motion to Dismiss under the provisions of Rule 12(b) (1), (2) and (6) of the North Carolina Rules of Civil Procedure on the grounds (1) that the Court does not have jurisdiction over the subject matter, (2) does not have jurisdiction over the defendant Cabarrus Memorial Hospital and (3) that the plaintiff has failed to state a claim against the defendant Cabarrus Memorial Hospital upon which relief can be granted.

The cause came on for hearing before his Honor James G. Exum, Jr., Judge Presiding at the September 3, 1973, Session of the Superior Court of Cabarrus County, and was treated by the court as a Motion for Summary Judgment under the provisions of Rule 56 of the North Carolina Rules of Civil Procedure. At the hearing, the court heard the arguments and stipulations of counsel, considered affidavits, and requested that the parties stipulate that its decision might be rendered out of session and out of district. The parties did so agree. An Order Denying Summary Judgment and Motion for Dismissal was entered by the Court on the 19th day of February, 1974. From said Order, the defendant Cabarrus Memorial Hospital timely excepted and appealed to the Court of Appeals of North Carolina under the provisions of G.S. 1-277(b).

*Byrd, Byrd, Ervin & Blanton by John W. Ervin, Jr., for plaintiff appellee.*

*Hartsell, Hartsell & Mills, P.A., by William L. Mills, Jr., and Fletcher L. Hartsell, Jr., for defendant appellant, Cabarrus Memorial Hospital.*

CAMPBELL, Judge.

[1]    The plaintiff filed a motion to dismiss this appeal on the grounds that defendant had no right of appeal from the denial of the motion for summary judgment. While there is generally no right of appeal in such cases, G.S. 1-277(b) does give the defendant the right to appeal the judge's ruling as to jurisdiction over the defendant.

Defendant, Cabarrus Memorial Hospital, (Hospital) contends that it is an agency of the State of North Carolina, in the nature of a municipality or public corporation separate and apart from Cabarrus County. The Hospital further contends that the purchase of liability insurance covering the Hospital by the county is not binding on the Hospital and does not waive its

governmental immunity and that since the Hospital is immune the court is without jurisdiction.

Defendant further argues that it must be a municipality or public corporation because otherwise, under Article VIII, Section 1, of the North Carolina Constitution, its very existence would be unconstitutional.

Article VIII, Section 1, of the North Carolina Constitution provides:

> "*Corporate charters.* No corporation shall be created, nor shall its charter be extended, altered, or amended by special act, except corporations for charitable, educational, penal, or reformatory purposes that are to be and remain under the patronage and control of the State; but the General Assembly shall provide by general laws for the chartering, organization, and powers of all corporations, and for the amending, extending, and forfeiture of all charters, except those above permitted by special act. All such general acts may be altered from time to time or repealed. The General Assembly may at any time by special act repeal the charter of any corporation."

Defendant does not make the argument that it was created by the Legislature as a charitable organization. A public hospital maintained primarily as a charitable institution has no charitable immunity. *Rabon v. Hospital,* 269 N.C. 1, 152 S.E. 2d 485 (1967). Nor apparently does defendant make the argument that it is a State hospital for the mentally disturbed under N.C.G.S. Chapter 122 or a State sanatorium for tuberculosis under certain portions of N.C.G.S. Chapter 131. Indeed, the State of North Carolina is not directly involved in the operation, supervision, administration, or funding of Cabarrus Memorial Hospital. The employees of the Hospital are members of the North Carolina Local Governmental Employees' Retirement System.

Defendant has cited a number of cases from other jurisdictions holding county and municipal hospitals governmentally immune. However, these cases accepted the premise that the hospital in question was an agency of the local government and the holdings of those courts are based on the determination that the furnishing of the health care is a governmental and not proprietary function. This doctrine does not affect the issue before us in this case.

[2]   The issue then is whether Cabarrus Memorial Hospital is a municipality. The term "municipality" or "municipal corporation" has been defined at various places in the North Carolina General Statutes as any incorporated city, town or village, or a county. G.S. 160-456(9), G.S. 157-3(14), G.S. 143-229(6). In the case law, "A municipal corporation, city or town, is an agency created by the State to assist in the civil government of a designated territory and the people embraced within these limits." *Smith v. Winston-Salem; Thomas v. Winston-Salem,* 247 N.C. 349, 100 S.E. 2d 835 (1957). However, the term "municipal corporation" should not be construed narrowly to include only cities, towns, counties and school districts, but in its broader sense the term includes all public corporations exercising governmental functions within constitutional limitations. *Wells v. Housing Authority,* 213 N.C. 744, 197 S.E. 693 (1938). A municipal corporation must have a public purpose and be invested with a governmental function. What is a "public purpose" for which the General Assembly may create a municipal corporation is a question for the courts to determine on the basis of the end sought to be reached and the means used, rather than of statutory declarations. *Wells v. Housing Authority, supra.* In several instances, entities other than cities and towns have been held to be, in essence, municipalities or quasi municipalities in that they were created for a public purpose and vested with a governmental function. (Municipal housing authority) *Wells v. Housing Authority, supra; Cox v. Kinston,* 217 N.C. 391, 8 S.E. 2d 252 (1940); *Mallard v. Housing Authority,* 221 N.C. 334, 20 S.E. 2d 281 (1942); *Powell v. Housing Authority,* 251 N.C. 812, 112 S.E. 2d 386 (1960). (Municipal airport authority) *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803 (1946). See also *Webb v. Port Commission,* 205 N.C. 663, 172 S.E. 377 (1934). But see *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310 (1953).

Ch. 307 [1935] N.C. Pub.-Local and Priv. L., p. 276 (Chapter 307) authorized the Cabarrus County Commissioners, upon a majority vote of said commissioners or upon petition of two hundred voters of said county to order an election on the issue of whether the county should be allowed to issue bonds for the establishment of a hospital to be known as Cabarrus County Hospital (now Cabarrus Memorial Hospital) and to levy a special tax to pay off said bonds. If the election succeeded, the Treasurer of Cabarrus County was to act as treasurer for the

Hospital. All proceeds from the sale of bonds and the special tax were to be paid into the Cabarrus County Treasurer who was to pay the interest on the bonds, to pay off the bonds at maturity, and to receive and pay out all other monies under the control of, and at the direction of, the executive committee of the Hospital. The trustees of the Hospital were to be selected by the Board of County Commissioners. The trustees were to select an executive committee which would fill any vacancies on the Board of Trustees and which would adopt rules and regulations for the governing of the Hospital, and which would file with the county commissioners an annual report of their proceedings and a statement of all receipts and expenditures and a certification of the amount necessary to maintain the Hospital in the ensuing year. The stated purpose of the establishment of the Hospital was to be "for the benefit of the inhabitants of Cabarrus County, and of any person falling sick or being maimed within its limits." Finally the act provided:

> "Sec. 9. That 'Cabarrus County Hospital' is hereby declared to be a body corporate, with power to receive and hold gifts, grants, and devises of real and personal property, to sue and be sued, and to do any and all lawful acts necessary to carry out the objects of its creation, and shall possess all other rights and powers usually incident to corporations."

[3]  This last portion of the act of the Legislature is the only reference in the act to any corporate existence. It seems clear that the Legislature, by granting corporate status, was not establishing a municipality but was granting the Hospital the right to own property and make contracts. There were provisions in the general law for incorporating county hospitals at the time. See G.S. 131-4, *et seq.* However, under the general law, the special tax that the County Commissioners were authorized to impose was limited to one-fifteenth (1/15th) of one cent per one hundred dollar valuation. Chapter 307 allowed the Cabarrus County Commissioners to impose a special tax of two cents per one hundred dollar valuation. Furthermore, the general law provided for the popular election of the Board of Trustees of a county hospital contrary to the procedures established in Chapter 307. In all other respects, the act establishing Cabarrus Memorial Hospital is virtually identical with the general laws in effect at the time for the establishment of public hospitals by counties. We can discern no intent by the Legislature to establish the Hospital as a separate municipality to assist in the civil

---

government of the area embraced by the Hospital and to cloak that municipality with governmental immunity. See *Lee v. Poston,* 233 N.C. 546, 64 S.E. 2d 835 (1951). It seems clear that the Legislature intended Cabarrus Memorial Hospital to be a county agency and went to the separate corporate format by the special act to avoid using the general law available. A review of the Public-Local and Private Laws shows that the Legislature used this device for creating county hospitals on a number of other occasions. We would point out that in several opinions or rulings by various agencies, Cabarrus Memorial Hospital has been held to be an agency or instrumentality of the county:

1) North Carolina Attorney General and the North Carolina Local Governmental Employees' Retirement System ruled that the Hospital was a wholly-owned instrumentality of the county and was a separate political subdivision of government for retirement purposes and was eligible for participation in the Local Governmental Employees' Retirement System.

2) The North Carolina Employment Security Commission ruled that the Hospital was an instrumentality of the county and therefore exempt under the Employment Security Law.

3) The Attorney General ruled that although the Hospital was a corporation separate from the county, it was a direct instrumentality of the county and that suits brought by the Hospital were in reality brought by the county and that therefore it was exempt from paying any process tax or sheriff's fee.

4) The North Carolina Department of Revenue ruled that the Hospital was a county-owned and operated hospital, that it was in integral part of the county operation, and, therefore, that any application for refund of gasoline taxes paid by the Hospital must be incorporated with the county's application.

5) The Attorney General ruled that the Hospital was a county agency and therefore subject to the provisions of G.S. 143-129 relating to bidding on public contracts.

6) The United States Internal Revenue Service ruled that the Hospital was an instrumentality of the county and therefore not subject to federal income tax.

The defendant Cabarrus Memorial Hospital is a county agency and is bound by the county's purchase of insurance for the defendant. Defendant's argument that it may accept the benefit of county bonds, county taxes, use of the county treasury

and treasurer and exemption from taxation as a county agency but that it may disavow the county's purchase of insurance is without·merit. Each instance merely involves a cost of doing business. We find no error in the denial by the trial court of defendant's motion to dismiss and the denial of its motion for summary judgment.

Affirmed.

Chief Judge BROCK and Judge BRITT concur.