**Lori BARBIER, Plaintiff,**

v.

**THE DURHAM COUNTY BOARD OF EDUCATION and Brandon Smith, Defendants.**

**No. 1:01CV896.**

United States District Court, M.D. North Carolina.

Aug. 30, 2002.

---

Joy Rhyne Webb, Browne Flebotte Wilson & Horn, P.L.L.C., Durham, NC, for Lori Barbier.

Donna R. Rascoe, Patricia L. Holland, Cranfill Sumner & Hartzog, Raleigh, NC, Daniel W. Clark, Kenneth A. Soo, Tharrington Smith, Raleigh, NC, for Durham County Bd. of Educ.

Allan R. Gitter, Womble Carlyle Sandridge & Rice, Winston-Salem, NC, for Brandon Smith.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is currently before the Court on Defendant Durham County Board of Education's ("Defendant DCBE") Motion to Dismiss [Document # 5] pursuant to which Defendant DCBE seeks to have all the claims asserted against it by Plaintiff Lori Barbier ("Plaintiff") dismissed for failure to state a claim upon which relief may be granted. As explained below, Defendant DCBE's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. Also before the Court is Defendant Brandon Smith's ("Defendant Smith") Motion for Judgment on the Pleadings [Document # 9] which seeks judgment on Plaintiff's claim for negligent infliction of emotional distress. For the reasons explained below, Defendant Smith's Motion for Judgment on the Pleadings is GRANTED such that Plaintiff's claim against Defendant Smith for negligent infliction of emotional distress is DISMISSED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The documents available to the Court indicate that Plaintiff was hired by Defendant DCBE as a chorus teacher at Githens Middle School in October, 1998. At the time Plaintiff was hired, Defendant Smith was the principal at Githens Middle School. According to Plaintiff, at her initial interview Defendant Smith told her that she was beautiful, made other general comments regarding her appearance, and joked about a marriage proposal. Plaintiff further claims that once she was hired in the fall of 1998, Defendant Smith "began a series of sexually explicit and suggestive behavior[s] toward[ ] Plaintiff." (Pl.'s Mem. Law Opp'n Def. DCBE's Mot. Dismiss (hereinafter "Pl.'s Opp'n"), at 2.)

Specifically, Plaintiff alleges that in late October, 1998, Defendant Smith stopped by her classroom. Defendant Smith advised Plaintiff that he was "simply checking on her." (*See* Compl., at ¶ 7.) He asked her, however, to accompany him into her private office where he told her that he knew her job was a tough position and he thought that she needed a hug. Plaintiff also references a situation that occurred during a school improvement day in February, 1999. Plaintiff claims that while she was working to clean out the band room she witnessed the PTA President pushing and pulling an electric sander in a manner that appeared to be purposely suggestive. Later, Plaintiff states that Defendant Smith entered the room where Plaintiff was working and described his version of the scene. According to Plaintiff, Defendant Smith went on to announce that "every man loves to see a woman with a power tool" and even asked Plaintiff whether she had ever done any work with power tools. (Pl.'s Opp'n, at 2.)

Plaintiff also alleges that Defendant Smith repeatedly asked her when he could come to her house for a Watsu water massage session.[1] Plaintiff apparently agreed, as Defendant Smith's first Watsu session with Plaintiff was on January 15, 1999. During February, 1999, Plaintiff conducted a second and third Watsu session with Defendant Smith. At the start of the third session, though, Plaintiff alleges that when she was ready to begin the massage, she noticed that Defendant Smith had removed his bathing suit. When Plaintiff told Defendant Smith that his behavior in that regard was inappropriate, he got out of the pool, wrapped a towel around himself, and left without paying Plaintiff for any of the Watsu sessions.

During the third week of March, 1999 Defendant Smith was showing Plaintiff the risers in the gym storage closet. Plaintiff apparently planned to use the risers during the March choral show. According to Plaintiff, while Defendant Smith was explaining how to set up the risers, he interrupted himself to say "you're going to have to stop looking at me with those eyes, or we're not going to able to get through this without my embarrassing myself." (*Id.*, at 3.) Plaintiff then claims that Defendant Smith implied that he was becoming sexually aroused by "adjusting his pants and jiggling his leg." (*Id.*) Later that same month, while backstage in the theater studio discussing the upcoming choral show, Plaintiff claims that Defendant Smith grabbed her around her body, placed his hands on her buttocks, and pulled her up against his pelvis. In what Plaintiff describes as a "rather forced grasp," Defendant Smith allegedly kissed Plaintiff with an open mouth, then broke the hold and said "Oh my God, you don't know what you did to me. You're going to have me so I can't walk out of here." (*Id.*)

On another occasion, on or about April 30, 1999, Plaintiff and Defendant Smith were talking in the hall after a parent/teacher/principal conference. Defendant Smith was apparently giving Plaintiff advice on how to better manage her parent conferences. According to Plaintiff, Defendant Smith advised her that

it's all in how you play the game, Barbier—letting people see what you want them to see at the moment, and only what you want them to see at the moment. For instance, people in the hallway right now think the new chorus teacher is having an administrative

---

1. Plaintiff is a certified practitioner of Watsu, a type of massage performed in water. Plaintiff performed her Watsu sessions in her home. She claims that she advised Defendant Smith of her job as a Watsu massage therapist when she was hired. (Compl., at ¶ 9.)

meeting with her Principal. They have no idea I am telling you how beautiful you are and how bad I want you. And I better stop talking like this before it gets difficult to walk up the hall—anyway you get my drift.

(*Id.*, at 4.) Around that same time, in May, 1999, Plaintiff was monitoring a class as they watched a movie. Defendant Smith entered the room just as the lead character in the movie asked another character whether it was true that "all smart girls are also good lovers[.]" (*Id.*). Plaintiff claims that Defendant Smith leaned and whispered to her "I bet you're very smart in that case." (*Id.*)

Plaintiff alleges that Defendant Smith's inappropriate behavior continued into the summer. Specifically, Plaintiff states that during July, 1999, Defendant Smith called her at home on a Friday evening to ask her to assist with an interview of a prospective drama teacher. When Plaintiff answered the phone, Defendant Smith allegedly asked her "what a beautiful girl ... was doing [at] home on a Friday night" and claimed that he was "going to have to do something about that." (*Id.*) Nevertheless, Plaintiff assisted with the interview which was conducted on or about July 18, 1999. According to Plaintiff, while they were giving the prospective teacher a tour of the school grounds, Defendant Smith "snuck touches" of her and made suggestive eye contact. After the interview, Defendant Smith called Plaintiff at home and left a message that he wanted to see her—not necessarily at school—to talk about some things and to thank her for assisting with the interview.

In August, 1999, Plaintiff returned to Githens Middle School as a "second year lateral entry initially licensed teacher." (*Id.*, at 5.) Prior to the start of classes, Defendant Smith stopped by Plaintiff's class for a meeting. At this meeting, Plaintiff advised Defendant Smith that he needed to stop his inappropriate behavior towards her. Plaintiff alleges that in response to her request that he stop his suggestive behavior, Defendant Smith told her that "she was beautiful, even when she was angry and told her he also thought she was sexy." (*Id.*)

In September, 1999, Plaintiff reported Defendant Smith's behavior to Ms. Ronnie Lily, the Arts Coordinator for the Durham Public Schools. Plaintiff advised Ms. Lily that she had, in her opinion, been subjected to a hostile work environment by Defendant Smith. Thereafter, on September 15, 1999, a conference was held between Plaintiff, Ms. Lily, and Ms. Lisa McIver, the choral music consultant for the Durham Public Schools. During this meeting, Plaintiff claims that she was encouraged by Ms. Lily and Ms. McIver to concentrate on her job performance and to stop pursuing sexual harassment complaints or she would likely lose her job. Following Plaintiff's complaints to Defendant Smith and Ms. Lily, Plaintiff allegedly began to encounter difficulties at work. According to Plaintiff, a work order to have a telephone installed in her class was rescinded. Moreover, Plaintiff claims that she was never reimbursed for certain authorized purchases that she made to improve her classroom. Plaintiff also claims that following her complaint to Defendant Smith, she began to experience problems from the administration regarding disciplinary issues. More specifically, Plaintiff alleges that Defendant Smith refused to acknowledge the discipline referral files for several of her students.

In October, 1999, Plaintiff contacted Dr. Burt L'Homme, Superintendent of Curriculum for the Durham Public Schools to report the sexual harassment she had allegedly endured from Defendant Smith. Instead of documenting her complaint, Dr. L'Homme advised Plaintiff that she should

contact Mr. Calvin Dobbins, Associate Superintendent of Administrative Services. Feeling that her complaints had been ignored, instead of contacting Mr. Dobbins, Plaintiff contacted the National Education Association (the "NEA") to see if they could help with her situation.

Thereafter, Ms. Karen Bush, a representative from the NEA, contacted Mr. Dobbins and inquired into why no action had been taken regarding Plaintiff's complaints of sexual harassment and retaliation. As an apparent result of this inquiry, Defendant Smith, on or about January 12, 2000, hand-delivered a message to Plaintiff asking her to call Mr. Dobbins. Defendant Smith offered to watch Plaintiff's class so that she could call Mr. Dobbins immediately. When Plaintiff spoke with Mr. Dobbins, he requested a meeting. Accordingly, on February 15, 2000, Plaintiff, Ms. Bush, Mr. Kenneth Soo (an attorney for the Durham Public School System), and Mr. Rodney Lofton (the Human Resources Director), met to discuss Plaintiff's allegations against Defendant Smith.

After this meeting, on February 17, 2000, Defendant Smith was placed on suspension. On April 3, 2000, however, Plaintiff claims that Ms. Delia Robinson, the interim principal, encouraged her to look for employment at another school due to the "negative environment" Plaintiff's actions had fostered at Githens Middle School. Nevertheless, Plaintiff indicated to Ms. Robinson that she intended to return to Githens Middle School the following year. On May 10, 2000, however, Plaintiff was notified that her contract would not be renewed unless she could verify that she had met the proper licensing requirements. Plaintiff claims that when she met with Ms. Robinson to confirm her eligibility for employment, Ms. Robinson told her to present her documentation to Ms. Elsa Woods, Assistant Superintendent for Curriculum. Although

Plaintiff claims that she called Ms. Woods twice, once on May 18, 2000, and again on May 22, 2000, Plaintiff received, on May 24, 2000, a letter informing her that her contract was not going to be renewed for the upcoming school year. Plaintiff also alleges that she made attempts to procure a provisional license so that she could seek re-employment at Githens Middle School. According to Plaintiff, though, her telephone calls in that regard went unreturned. As a result of the activities detailed above, Plaintiff filed a formal charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on July 24, 2000 alleging claims of sexual harassment and retaliation.

After fulfilling the appropriate administrative requirements, Plaintiff filed the instant action against Defendant DCBE and Defendant Smith in the North Carolina Superior Court for Durham County, North Carolina. Plaintiff's Complaint alleges claims for sexual harassment, retaliation, wrongful discharge, negligent infliction of emotional distress, and negligent retention/supervision against Defendant DCBE and a claim for negligent infliction of emotional distress against Defendant Smith. The matter was removed to this Court on September 21, 2001. Thereafter, on November 1, 2001, Defendant DCBE filed the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Smith's Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure was filed on January 24, 2002. The Court will now consider each of the Motions in turn, beginning with Defendant DCBE's Motion to Dismiss.

## II. DISCUSSION

### A. Defendant DCBE's Motion to Dismiss

In considering a motion to dismiss for failure to state a claim upon which relief

624

may be granted, dismissals are allowed only in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). A court should not dismiss a complaint, or any particular allegation contained therein, "unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995). Nevertheless, if a complaint fails to sufficiently state facts to support each element of the claims asserted therein, dismissal for failure to state a claim is proper. *Iodice v. United States,* 289 F.3d 270, 281 (4th Cir.2002).

As noted before, Plaintiff has asserted multiple claims against Defendant DCBE. Specifically, she has alleged claims for sexual harassment and retaliation under Title VII, and wrongful discharge, negligent infliction of emotional distress, and negligent supervision/retention under North Carolina law. The Court will address Defendant DCBE's Motion to Dismiss as it relates to each of Plaintiff's claims individually.

### 1. Plaintiff's Sexual Harassment Claim

Plaintiff's sexual harassment claim alleges that she was, due to the actions of Defendant Smith, subjected to a hostile work environment in violation of Title VII. With respect to Plaintiff's hostile work environment claim, Defendant DCBE initial-

ly argues that Plaintiff's claim is barred because of her failure to adhere to the 180–day filing deadline associated with such claims under Title VII. More specifically, the Court notes that under Title VII, a plaintiff can only seek redress for discriminatory acts that occurred within 180 days prior to the filing of the EEOC charge. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 439 (4th Cir.1998); 42 U.S.C. § 2000e–5(e)(1). Defendant DCBE therefore claims that, because the last allegedly discriminatory act referenced by Plaintiff occurred in August, 1999, and Plaintiff did not file her EEOC charge until July 24, 2000, she fails to meet the 180–day deadline imposed by Title VII.[2]

Of course, filing a timely charge with the EEOC is not a jurisdictional prerequisite to bringing suit in federal court. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Rather, it is a filing requirement akin to a statute of limitations and is therefore subject to waiver, estoppel, and equitable tolling. *Id.* Although Plaintiff effectively admits that she missed the 180–day filing requirement, she claims that Defendant DCBE should be equitably estopped from relying on the 180–day limitation as a defense to her sexual harassment claim. With respect to equitable estoppel, Fourth Circuit law states that the 180–day period will not be adjusted "unless the employee's failure to file in [a] timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his [EEOC] charge." *Price v. Litton Bus. Sys., Inc.,* 694 F.2d 963, 965 (4th Cir.1982). If, however, the employer engages in conduct that is likely

**2.** Defendant DCBE noted that 180 days prior to July 24, 2000—the date on which Plaintiff submitted her EEOC charge—was January

26, 2000, well after the August, 1999 date on which Defendant Smith's allegedly discriminatory conduct apparently stopped.

to mislead the employee into sleeping on his rights, the deadline must be adjusted so as to "exclude[ ] from the 180–day period such time as the employer's coercion effectively operates to delay the employee's efforts to enforce his rights." *Felty v. Graves–Humphreys Co.*, 785 F.2d 516, 520 (4th Cir.1986). This provision creates a reliance element such that the 180–day period can only be tolled if, and to the extent that, the employer's coercive acts actually coerce the employee into sitting on his rights. Therefore, "[a]ny affirmative act by the employee to enforce his rights would indicate that the employer's improper influence has ended." *Id.*

■ In the instant case, the Court notes that Plaintiff met with two administrators (Ms. Lily and Ms. McIver) on September 15, 1999 to discuss the behavior of Defendant Smith. At that meeting, Plaintiff was allegedly counseled to concentrate on her work performance and to stop pursuing her harassment claim if she valued her job. Of course, Plaintiff did contact Dr. L'Homme and the NEA some time after the September 15, 1999 meeting. However, at this early stage in the litigation process, the record is not clear regarding what was said in those conversations. Without more, then, this Court cannot say that Plaintiff engaged in an affirmative act to enforce her rights prior to the loss of her job.[3] Therefore, given the pressure that was put on Plaintiff to quit pursuing her harassment claims, this Court must find, at least at this stage of the case, that Plaintiff has stated a case

for the application of estoppel to her Title VII sexual harassment claim.

■ With respect to the merits of Plaintiff's Title VII sexual harassment claim,[4] Defendant DCBE also argues that it should be dismissed because Plaintiff has failed to establish that Defendant Smith's comments/actions were unwelcome. Defendant DCBE further argues that Defendant Smith's alleged behavior is not severe and pervasive enough to rise to the level of actionable sexual harassment. As to these two arguments, the Court is entirely unpersuaded. Plaintiff has clearly demonstrated that Defendant Smith's conduct was unwelcome, for she asked him to stop, and even described his behavior as "unwanted" in her Complaint. (*See* Compl., at ¶ 40.) Moreover, given the graphic implications of some of Defendant Smith's actions, and the fact that he allegedly grabbed Plaintiff's buttocks and kissed her with his open mouth while holding her against him, this Court finds that Plaintiff's allegations are sufficient to establish that the alleged harassment was sufficiently severe and pervasive. Accordingly, for the reason explained above, Defendant DCBE's Motion to Dismiss is DENIED to the extent it seeks to have Plaintiff's sexual harassment claim under Title VII dismissed for failure to state a claim for which relief may be granted.

**2. Plaintiff's Retaliation Claim**

■ Plaintiff has also alleged a claim for retaliation in violation of Title VII. To

3. The Fourth Circuit has stated that consulting coworkers does not amount to an affirmative act for purposes of an estoppel analysis. *Felty*, 785 F.2d at 520. In the same case, the Fourth Circuit declined to state an opinion regarding whether attorney contact would qualify as an affirmative act. *Id.*

4. In order to state a claim for sexual harassment amounting to a hostile work environ-

ment, Plaintiff must allege " '(1) unwelcome conduct; (2) that is based on ... sex; (3) which is sufficiently severe or pervasive to alter the ... conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.' " *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir.2002) (quoting *Conner v. Schrader–Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir.2000)).

establish a prima facie case of retaliatory termination, Plaintiff must show that she engaged in protected activity, that her employer (Defendant DCBE) took adverse employment action against her, and that a causal connection exists between the protected activity and the adverse action. *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991). With respect to Plaintiff's retaliation claim, Defendant DCBE initially argues that it too is time-barred because of the 180–day requirement previously discussed in connection with Plaintiff's sexual discrimination claim. The Court, however, has already determined that Plaintiff has stated a case for the application of equitable estoppel. In any event, the Court notes that the adverse employment action upon which Plaintiff's retaliation claim relies is the non-renewal of her employment contract. Because Plaintiff was notified of her employment status on May 24, 2000, and filed her EEOC charge on July 24, 2000, she has clearly met the 180–day filing requirement with respect to her retaliation claim.[5] Therefore, to the extent Defendant DCBE argues that Plaintiff's retaliation claim is time-barred, at this early stage of the litigation, the Court is not persuaded.

■ In contesting Plaintiff's retaliation claim, Defendant DCBE also argues that Plaintiff has failed to identify an adverse employment action to support her claim of retaliation. More specifically, Defendant DCBE claims that, because Plaintiff allegedly did not meet the proper licensing requirements, that she could not rely on her non-renewal as an adverse employ-

ment action for purposes of her retaliation claim. Plaintiff's Complaint, however, indicates that she met with her new principal, Ms. Robinson, sometime in May, 2000 to confirm her eligibility for employment and to present verification documentation to secure her position for the upcoming school year. (Compl., at ¶ 33.) As previously indicated, Ms. Robinson told Plaintiff to present her information to Ms. Woods, the Assistant Superintendent for Curriculum. Although Plaintiff apparently presented this information, via telephone, to Ms. Woods, her contract nevertheless went unrenewed. Accordingly, without the benefit of additional information from the discovery process, this Court cannot find that Plaintiff has failed to establish an adverse employment action. She has alleged that she presented her verification documentation and that her contract was still not renewed. As a result, this Court is not persuaded by Defendant DCBE's argument that Plaintiff's retaliation claim should be dismissed because she was terminated because of her alleged failure to meet the licensing requirements.

■ Finally, with respect to Plaintiff's retaliation claim, Defendant DCBE argues that Plaintiff has failed to meet the third element of her prima facie case, that is, to allege sufficient facts to demonstrate a causal connection between her non-renewal and the resistance she gave to Defendant Smith's behavior. Defendant DCBE argues that because of this deficiency, her claim should be dismissed for failure to state a claim upon which relief may be granted. In considering Defendant DBE's

---

**5.** Defendant DCBE also appears to argue that it could not have retaliated against Plaintiff for filing the EEOC charge because the decision to not renew her contract was made prior to the filing of her EEOC charge. Plaintiff did, of course, make numerous complaints to personnel administration and even contacted the NEA for which she contends Defendant

DCBE subjected her to retaliation in the form of non-renewal of her employment contract. Therefore, to the extent that Defendant DCBE argues that Plaintiff did not engage in protected activity until after it decided not to renew her employment contract, the Court is not persuaded.

argument, though, the Court notes that under Fourth Circuit law, very little proof is required to establish the causal link in a retaliation case; in fact, in many instances, the connection is inferred from the mere act of termination, or in this case, non-renewal. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir.1998) ("Although Karpel presents little or no direct evidence of a causal connection between her protected activity and Inova's adverse action, little is required."); *McNairn*, 929 F.2d at 980 (stating, in reference to the causal connection element of a retaliation case, that "it can be inferred that the termination was triggered by the lawsuit"). Defendant DCBE further claims that too much time elapsed between Plaintiff's protected activity and the decision not to renew her contract for such an inference to occur. Specifically, Defendant DCBE appears to argue that approximately three months (the time between Plaintiff's meeting with the NEA representative and the school administrators) is too long of a time lapse to infer a causal connection. The Court notes, however, that in *McNairn*, the Fourth Circuit inferred the causal connection where approximately eight months elapsed between the plaintiff's protected activity and the decision not to renew her appointment. *Id.*, at 977. Therefore, Defendant DCBE's argument regarding the lapse of time is unpersuasive.

Of course, the record is not entirely clear as to when the administrators that made the decision regarding Plaintiff's employment status actually learned of Plaintiff's resistance to Defendant Smith's actions. Such information could potentially undermine Plaintiff's inference of causation and lend support to Defendant

DCBE's defense that Plaintiff's contract was not renewed because of her failure to meet licensing requirements. Nevertheless, without some indication of whether the administrators that decided not to renew Plaintiff's contract knew of Plaintiff's resistence to Defendant Smith's conduct at the time the decision of non-renewal was made, and viewing the Complaint in the light most favorable to Plaintiff, the Court must find that Plaintiff has stated a claim, at least at this early stage, for discriminatory retaliation. Accordingly, for the reasons explained above, Defendant DCBE's Motion to Dismiss is DENIED to the extent it seeks to have Plaintiff's retaliation claim dismissed for failure to state a claim upon which relief may be granted.

3. Plaintiff's Wrongful Discharge Claim

█ With respect to Plaintiff's Third Cause of Action for wrongful discharge under the North Carolina Equal Employment Practices Act (the "NCEEPA"), Defendant DCBE argues that Plaintiff's claim should be dismissed because there is no private right of action under the NCEEPA.[6] In considering this very issue, the Fourth Circuit stated that "absent a clear indication from the courts or the legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA ...." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir.2000) (internal quotation omitted). Notably, at this point, it does not appear that either the North Carolina Supreme Court or the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA. *See id.* Instead, the NCEEPA is typically applied to common law wrongful discharge claims

---

6. The Court also notes that Plaintiff failed to address her Third Cause of Action in her opposition to Defendant DCBE's Motion to Dismiss. Although this could potentially mean that Plaintiff has abandoned this claim, the Court will nevertheless address Plaintiff's Third Cause of Action for wrongful discharge.

(*Coman* claims) [7] or specific statutory remedies.[8] Plaintiff, however, has not requested a specific statutory remedy that could be linked with her allegations under the NCEEPA. Moreover, with respect to a *Coman* claim, the Court notes that the NCEEPA does not cover claims for retaliation. *Mullis v. Mechanics and Farmers Bank,* 994 F.Supp. 680, 688 (M.D.N.C. 1997) (stating that "no North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices"). Because Plaintiff cannot assert a private cause of action under the NCEEPA without relying on *Coman,* and *Coman* does not cover claims for retaliatory discharge, this Court finds that Plaintiff's claim for wrongful discharge fails to state a claim upon which relief may be granted. Accordingly, Defendant DCBE's Motion to Dismiss is GRANTED to the extent that Plaintiff's Third Cause of Action for wrongful discharge under the NCEEPA is hereby DISMISSED.[9]

### 4. Plaintiff's Negligent Infliction of Emotional Distress Claim

 Plaintiff's Fourth Cause of Action is for negligent infliction of emotional distress. In order to state such a claim, Plaintiff must allege that Defendant DCBE (1) negligently engaged in conduct, (2) which was reasonably foreseeable would cause severe emotional distress, and (3) the conduct did, in fact, cause severe emotional distress. *McAllister v. Ha,* 347

N.C. 638, 645, 496 S.E.2d 577, 582–83 (1998). Defendant DCBE argues that Plaintiff's claim for negligent infliction of emotional distress fails because Plaintiff has not alleged that she suffered severe emotional distress and because Plaintiff does not allege any negligent conduct on the part of Defendant DCBE. Neither of Defendant DCBE's arguments, however, are persuasive.

 With respect to Defendant DCBE's first argument, that Plaintiff failed to allege that she suffered severe emotional distress, North Carolina law states that "severe emotional distress" is "any ... type of severe or disabling emotional or mental condition which can be generally recognized and diagnosed by professionals trained to do so." *Pardasani v. Rack Room Shoes, Inc.,* 912 F.Supp. 187, 192 (M.D.N.C.1996). Plaintiff has alleged that she suffered "severe emotional distress, anxiety, and anguish which caused her to seek medical attention". While physical distress coupled with the need to seek medical attention is not, without more, sufficient to meet the severe emotional distress requirement, Plaintiff alleges that she suffered from anxiety, which, according to Plaintiff, can be a severe and disabling condition. Moreover, the Court notes that anxiety is clearly a recognized medical condition. *See generally Fox v. Gen. Motors Corp.,* 247 F.3d 169, 180 (4th Cir.2001) (upholding award under the ADA where part of claimed disability was anxiety); *see also Johnson*

---

7. Such common law discharge claims are frequently called *Coman* claims because they were first recognized by the North Carolina Supreme Court in *Coman v. Thomas Mfg. Co.,* 325 N.C. 172, 381 S.E.2d 445 (1989).

8. For an example of a specific statutory remedy, see *North Carolina Dep't of Corr. v. Hodge,* 99 N.C.App. 602, 610–11, 394 S.E.2d 285, 289 (1990) (discussing N.C. Gen.Stat. § 126–36, which protects state employees from cer-

tain discriminatory practices). Notably, Plaintiff does not reference § 126–36 as part of her state law claims.

9. Because of the Court's ruling regarding this claim, there is no reason for the Court to address Defendant DCBE's additional arguments that Plaintiff's wrongful discharge claim should fail because she missed the 180–day deadline and because she was a contract employee.

*v. Ruark Obstetrics & Gynecology Assocs.*, 327 N.C. 283, 303–04, 395 S.E.2d 85, 97 (1990) (stating that *temporary* anxiety [10] did not amount to severe emotional distress). Therefore, viewing the Complaint in the light most favorable to Plaintiff, at this stage, the Court must find that Plaintiff has alleged that she suffered from severe emotional distress.

■ With respect to Defendant DCBE's second argument, that Plaintiff has failed to allege any negligent conduct on the part of Defendant DCBE, the Court notes that Plaintiff's Complaint alleges that Defendant DCBE was negligent in that it "failed to take action to prevent or stop [Defendant] Smith's harassing and abusive conduct towards Plaintiff and allowed others to retaliate against Plaintiff . . . ." (Compl., at ¶ 57.) In other words, Plaintiff alleges that Defendant DCBE failed to use ordinary and reasonable care when it allegedly took no action with respect to Defendant Smith's conduct. Plaintiff's allegations in this regard suggest that, had Defendant DCBE not acted in a negligent fashion, it would have realized how Defendant Smith was behaving towards Plaintiff (and perhaps, according to Plaintiff, towards other teachers) and would have taken some action to put an end to it. Therefore, taken in the light most favorable to Plaintiff, this Court finds that Plaintiff has alleged that Defendant DCBE engaged in negligent behavior in support of her claim for negligent infliction of emotional distress. Accordingly, for the reasons explained above, Defendant DCBE's Motion to Dismiss is DENIED with respect to Plaintiff's claim for negligent infliction of emotional distress.

5. Plaintiff's Negligent Supervision/Retention Claim

■ Plaintiff's Fifth Cause of Action is for negligent supervision/retention. To state a claim for negligent supervision/retention against Defendant DCBE Plaintiff must allege that Defendant Smith committed a tortious act that resulted in injury and that prior to the act, Defendant DCBE knew or had reason to know of Defendant Smith's conduct. *Graham v. Hardee's Food Sys., Inc.*, 121 N.C.App. 382, 385, 465 S.E.2d 558, 560 (1996). In challenging Plaintiff's claims for negligent supervision/retention, Defendant DCBE makes two principal arguments. First, Defendant DCBE argues that Plaintiff's claim must fail because Plaintiff cannot establish an underlying claim of actionable sexual harassment. Second, Defendant DCBE claims that Plaintiff fails to allege that Defendant DCBE knew or had reason to know of Defendant Smith's conduct.

■ With respect to Defendant DCBE's first argument, the Court notes that, as discussed above, Plaintiff has stated a claim for sexual harassment. As a result, Defendant DCBE cannot now argue that Plaintiff's negligent supervision/retention claim should fail due to the deficiencies in her sexual harassment claim. As to Defendant DCBE's second argument, that Plaintiff failed to demonstrate that it knew or had reason to know about Defendant Smith's conduct, Plaintiff's Complaint plainly states that "upon information and belief Defendant [DCBE] had knowledge or should have known had it used ordinary care in oversight and supervision that [Defendant] Smith had committed prior similar actions, including but [not] limited to sexually harassing and hostile conduct toward[ ] other employees." (Compl., at ¶ 63.) Taken in the light most favorable to Plaintiff, the Court finds, at this early stage, that Plaintiff has sufficiently alleged that Defendant DCBE knew or had reason to know of Defendant Smith's conduct. Both of the arguments

**10.** Neither party has alleged that Plaintiff's claimed anxiety was temporary in nature.

posited by Defendant DCBE in opposition to Plaintiff's claim for negligent supervision/retention are therefore unpersuasive.[11] Accordingly, Defendant DCBE's Motion to Dismiss is DENIED to the extent it relates to Plaintiff's claims for negligent supervision/retention.

### 6. Plaintiff's Claim for Punitive Damages [12]

The final argument raised by Defendant DCBE in its Motion to Dismiss is directed at Plaintiff's claim for punitive damages. In her Complaint, Plaintiff seeks punitive damages against Defendant DCBE for its alleged "malice and reckless indifference ... for sexual harassment," retaliation, and wrongful discharge. (Compl., at ¶¶ 2, 4, & 6.) With respect to punitive damages, the Court notes that under North Carolina law, municipalities and municipal corporations are immune from awards of punitive damages. *Long v. City of Charlotte*, 306 N.C. 187, 206–08, 293 S.E.2d 101, 113–115 (1982) (holding, as a matter of first impression, that "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages"). Furthermore, the Court notes that a public school board is considered a municipality in North Carolina. *See Sides v. Cabarrus Mem. Hosp., Inc.*, 22 N.C.App. 117, 120, 205 S.E.2d 784, 786–87, *modified on other grounds*, 287 N.C. 14, 213 S.E.2d 297 (1975) (stating that

"the term 'municipal corporation' should not be construed narrowly to include only cities, towns, counties, and school districts, but in its broader sense the term includes all public corporations exercising governmental functions within constitutional limitations"). Accordingly, to the extent Plaintiff seeks punitive damages against Defendant DCBE, it is immune from such an award. Defendant DCBE's Motion to Dismiss is therefore GRANTED to the extent that Plaintiff's claims for punitive damages are hereby DISMISSED.

### B. Defendant Smith's Motion for Judgment on the Pleadings

Separate from Defendant DCBE's Motion to Dismiss, Defendant Smith has filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. A party is entitled to judgment on the pleadings when no genuine issues of material fact exist and the case can properly be decided as a matter of law. *Davenport v. Davenport*, 146 F.Supp.2d 770, 783 (M.D.N.C.2001). Essentially, the standard used for a motion made pursuant to Rule 12(c) is the same standard used for motions to dismiss made under Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir.2002). Consequently, the pleadings must be read in the light most favorable to the non-moving party. *Id.* at 406.

---

**11.** Defendant DCBE also argues that a sexual harassment claims under Title VII cannot serve as the underlying tort for a negligent supervision/retention claim. The only support for Defendant DCBE's contention in this regard, however, is a case where the Fourth Circuit declined to consider the issue of whether a sexual harassment claims was an appropriate vehicle to support a claim for negligent supervision/retention under North Carolina law. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 250 (4th Cir.2000). Notably, no North Carolina Court has ever stated that a sexual harassment claim cannot support a claim for negligent supervision/retention. Therefore, this Court will not invalidate Plaintiff's claim at this point based on the mere fact that the Fourth Circuit has declined to consider the issue.

**12.** In her opposition to Defendant DCBE's Motion to Dismiss, Plaintiff does not discuss her claim for punitive damages. Nevertheless, even though such action may be considered abandonment, the Court will address Plaintiff's request for punitive damages against Defendant DCBE.

Pursuant to his Motion for Judgment on the Pleadings, Defendant Smith seeks judgment in his favor on Plaintiff's claim for negligent infliction of emotional distress, which is the only claim asserted by Plaintiff against Defendant Smith individually.[13] Specifically, Defendant Smith argues that Plaintiff has not alleged that Defendant Smith engaged in any negligent acts and that she failed to demonstrate that she suffered from severe emotional distress. This Court previously determined, in connection with the discussion of Plaintiff's claims for negligent infliction of emotional distress as to Defendant DCBE, that Plaintiff had sufficiently alleged that she suffered severe emotional distress. Because the harm that Plaintiff allegedly suffered with respect to her claim for negligent infliction of emotional distress against Defendant DCBE is the same harm relied on as to the instant claim against Defendant Smith, the same conclusion that Plaintiff has sufficiently alleged severe emotional distress is warranted here.

 Of course, the Court also considered the question of whether Plaintiff alleged a negligent act in connection with her claim for negligent infliction of emotional distress against Defendant DCBE. The actions that Plaintiff relied on in support of that claim (essentially, negligent supervision of Defendant Smith), however, are not the same actions relied on in support of her claim against Defendant Smith. In support of her negligent infliction of emotional distress claim against Defendant Smith, Plaintiff alleges that Defendant Smith negligently created a hostile work environment because of his sexual harassment. (Compl., at ¶ 56.) The Court notes, however, as did Defendant Smith, that acts of sexual harassment are "inherently intentional." *Thomas v. N. Telecom, Inc.,* 157 F.Supp.2d 627, 637 (M.D.N.C.2000). When the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress. *Mitchell v. Lydall, Inc.,* No. 93–1374, 1994 WL 38703, at *3 (4th Cir. Feb.10, 1994) (unpublished opinion).[14] After reviewing Plaintiff's Complaint in its most favorable light, this Court finds that it consists solely of allegations of intentional sexual harassment and not negligent acts by Defendant Smith. Accordingly, Plaintiff's claim against Defendant Smith for negligent infliction of emotional distress must fail. Defendant Smith's Motion for Judgment on the Pleadings is therefore GRANTED and all claims asserted by Plaintiff against Defendant Smith are hereby DISMISSED.[15]

## III. CONCLUSION

For the reasons explained above, Defendant DCBE's Motion to Dismiss is GRANTED IN PART to the extent that Plaintiff's claims against Defendant DCBE for wrongful discharge under the NCEE-PA and for punitive damages are hereby DISMISSED. Defendant DCBE's Motion to Dismiss is DENIED IN PART with

13. All of Plaintiff's other claims are asserted against Defendant DCBE, for it is Defendant Smith's employer.

14. Although *Mitchell* is an unpublished opinion, the Court finds it to be well-reasoned and therefore recognizes it here as persuasive authority.

15. In her response to Defendant Smith's Motion for Judgment on the Pleadings, Plaintiff suggests that she may want to amend her Complaint. Because it is not before the Court as a proper Motion to Amend, the Court has not addressed it as a part of this Memorandum Opinion, which, as noted, concerns Defendant DCBE's Motion to Dismiss and Defendant Smith's Motion for Judgment on the Pleadings.

respect to Plaintiff's claims against Defendant DCBE for sexual harassment, retaliation, negligent infliction of emotional distress, and negligent supervision/retention. Also for the reasons explained above, Defendant Smith's Motion for Judgment on the Pleadings as to Plaintiff's claim for negligent infliction of emotional distress is GRANTED and all of Plaintiff's claims against Defendant Smith are hereby DISMISSED.